UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IJEOMA ESOMONU,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>OMNICARE, INC.,<br><br>　　　　Defendant. | Case No.15-cv-02003-HSG<br><br>**ORDER DENYING PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Re: Dkt. No. 39 |

Before the Court is the motion for preliminary approval of class action settlement filed by Plaintiff Ijeoma Esomonu. Dkt. No. 39 ("Mot."). Plaintiff filed suit against Defendant Omnicare, Inc. for violating the Fair Credit Reporting Act, 15 U.S.C. §§ 1681, *et seq.* ("FCRA"), and related California statutes by failing to provide the proper disclosure form when Defendant obtained credit and background reports in connection with its hiring process. The parties have reached a settlement regarding Plaintiff's claims and now seek the required Court approval. For the reasons set forth below, the Court **DENIES** Plaintiff's motion for preliminary approval of class action settlement.

I.  **BACKGROUND**

　　A.　**Factual Allegations**

On May 4, 2015, Plaintiff filed this action against Defendant, alleging that its hiring practices violated the FCRA. Dkt. No. 1. Plaintiff then amended the complaint on July 21, 2016, adding additional state law claims, including violations of California's Consumer Credit Reporting Agencies Act ("CCRAA"), Cal. Civ. Code §§ 1785.1, *et seq.*, and California's Investigative Consumer Reporting Agencies Act ("ICRAA"), Cal. Civ. Code §§ 1786, *et seq.* Dkt. No. 41-1 ("FAC").

Plaintiff alleges that she was employed by Defendant in the State of California. FAC ¶ 5.

According to Plaintiff, when she applied for employment with Defendant, she was required to fill out and sign a background check authorization form and a waiver of liability. *Id.* ¶¶ 29–33. She alleges that the disclosures required under the FCRA, however, were "embedded with extraneous information" in these forms rather than contained in a stand-alone document. FAC ¶ 34. Plaintiff further alleges that Defendant failed to inform her that she had a right to request a summary of her rights under the FCRA. *Id.* ¶¶ 41, 48. Plaintiff accordingly alleges that Defendant obtained credit and background reports on her — as well as on other prospective, current, and former employees — in violation of federal and state law. *Id.* ¶¶ 2, 41. Defendant answered the complaint on August 12, 2016, denying all claims and asserting several affirmative defenses. Dkt. No. 44.

### B.     Settlement Agreement

Following informal discovery and with the assistance of a private mediator, the parties entered into a settlement agreement. *See* Dkt. No. 45-1. Plaintiff then filed the pending, unopposed motion for preliminary approval of settlement on June 13, 2016.

Pursuant to the terms of the current settlement agreement, Plaintiff "may apply to the Court" for an incentive award of up to $5,000 for her role as named plaintiff in this lawsuit. Dkt. No. 45-1 ("SA") ¶ 37. The settlement agreement refers to this as an "enhancement payment" for Plaintiff's "services to the Class and for the risks she undertook as a named Plaintiff." *Id.* ¶¶ 17, 37. It further states that Plaintiff "will receive the sum of Ten Thousand Dollars and Zero Cents ($10,000.00) for the general release she is giving Omnicare . . . ." *Id.* ¶ 38. The settlement agreement does not explicitly state that this general release payment is similarly subject to Court approval. Instead, the settlement agreement ambiguously states that Plaintiff will file a motion for an undefined "Class Representative Service Payment" with the Court. *Id.* ¶ 43. And Plaintiff's proposed class notice only states that "Class Counsel will seek an enhancement payment for the Class Representative, Plaintiff Ijeoma Esomonu, in the amount of $5,000." *See* Dkt. No. 39-3 at 6. It omits the $10,000 general release payment entirely. *Id.*

The Court raised several concerns about the settlement agreement during the two hearings on the motion. On August 18, 2016, the Court asked for authority to support the $10,000 payment to Plaintiff for a general release in addition to the $5,000 incentive payment. *See* Dkt. No. 52 at

2

8–9 (hearing transcript). On October 20, 2016, the parties then filed supplemental briefing to address, *inter alia*, this general release payment. *See* Dkt. Nos. 55 at 3–4. The supplemental briefing was insufficient and the Court again raised concerns about this payment at the subsequent hearing held on November 3, 2016. Yet the parties did not address this issue in their subsequent briefs. *See* Dkt. Nos. 59, 61.

## II.  LEGAL STANDARD

Federal Rule of Civil Procedure 23(e) provides that "[t]he claims, issues, or defenses of a certified class may be settled . . . only with the court's approval." The Rule is intended to "protect the unnamed members of the class from unjust or unfair settlements affecting their rights." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1100 (9th Cir. 2008). Accordingly, before a district court approves a class action settlement, it must conclude that the settlement is "fundamentally fair, adequate and reasonable." *In re Heritage Bond Litig.*, 546 F.3d 667, 674–75 (9th Cir. 2008).

Where the parties reach a class action settlement prior to class certification, district courts apply "a higher standard of fairness and a more probing inquiry than may normally be required under Rule 23(e)." *Dennis v. Kellogg Co.*, 697 F.3d 858, 864 (9th Cir. 2012) (quotation omitted). In those situations, courts "must be particularly vigilant not only for explicit collusion, but also for more subtle signs that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011). Courts, however, lack the authority to "delete, modify or substitute certain provisions. The settlement must stand or fall in its entirety." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998).

## III.  ANALYSIS

Monetary awards to plaintiffs are not inherently unfair or unreasonable. *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 958 (9th Cir. 2009) ("Incentive awards are fairly typical in class action cases."). They are designed to "compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez*, 563 F.3d at 958–59. Nevertheless, the Ninth Circuit has cautioned that "district courts must be vigilant

1  in scrutinizing all incentive awards to determine whether they destroy the adequacy of the class

2  representatives . . . ." *Radcliffe v. Experian Info. Solutions, Inc.*, 715 F.3d 1157, 1165 (9th Cir.

3  2013) (quotation omitted).  This is particularly true where "the proposed service fees greatly

4  exceed the payments to absent class members." *Id.*  "[I]f class representatives expect routinely to

5  receive special awards in addition to their share of the recovery, they may be tempted to accept

6  suboptimal settlements at the expense of the class members whose interests they are appointed to

7  guard." *Stanton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003) (quotation omitted).

8  Consequently, such payments must be justified by evidence "to justify the discrepancy between

9  [the named plaintiff's] award and those of the unnamed plaintiffs." *Alberto v. GMRI, Inc.*, 252

10 F.R.D. 652, 669 (E.D. Cal. 2008).

11 As drafted, Plaintiff's $10,000 payment for her general release appears to be a condition of

12 the settlement itself.  Yet the differential in the awards between Plaintiff and other class members

13 is substantial and, without evidence in the record to justify it, undermines the fundamental fairness

14 of the settlement.

15 The settlement agreement states that Defendant will establish a gross settlement fund of

16 $450,000.  SA ¶ 35.  This includes all attorneys' fees and costs, settlement administration fees, and

17 payments to Plaintiff.  SA ¶¶ 35, 37–38, 43–44.  The cash payments to the class will depend on the

18 timing of class members' claims.  Class members who have a claim between May 4, 2010, and

19 May 3, 2013 (approximately 16, 494 class members), will receive 20% of the net settlement fund

20 on a pro rata basis.  *Id.* ¶ 31; *see also* Dkt. No. 55 at 3.  And those who have claims from May 4,

21 2013, through preliminary approval (approximately 11,940 class members) will receive 80% of

22 the net settlement fund on a pro rata basis.  *Id.*  Given the currently estimated class size and the

23 estimated deductions from the gross settlement fund (including both the $5,000 and $10,000

24 payments to Plaintiff), each "20%" class member will receive approximately $3.29 and each

25 "80%" class member will receive approximately $18.18 from the settlement. [1]

26 Plaintiff suggests the $10,000 general release payment is nevertheless warranted because

---

[1] These figures are calculated after deducting the estimated attorneys' fees and costs, settlement administrator fees, and payments to Plaintiff from the gross settlement fund.

Plaintiff is "discharging all claims against Omnicare." Dkt. No. 55 at 3–4. In a brief she alludes to releasing a possible wrongful termination claim. *Id.* at 4. But there is no evidence in the record about the existence or strength of such a claim. Moreover, Plaintiff's only authority, *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 266–68 (N.D. Cal. 2015), confirms that the Court must engage in a detailed analysis before approving any award to Plaintiff. There, the plaintiff had submitted a motion for an incentive award and a payment for release of claims. *Id.* And the court relied heavily on a declaration from the named plaintiff and the unique facts of the case in ultimately granting a reduced incentive award and general release payment. *Id.* at 267.

Here, the settlement agreement does not require Plaintiff to file a motion or any declaration before being awarded $10,000 for her general release. Even if the Court ultimately rejects the $5,000 "enhancement award," the Court finds that an award to Plaintiff of $10,000 compared to the $3.29 or even $18.18 award to class members undermines the overall fairness of the proposed settlement. Because the Court cannot "delete, modify or substitute certain provisions" of the settlement agreement, the Court must reject the proposed settlement in its entirety. *Hanlon*, 150 F.3d at 1026. The Court notes the importance of careful drafting: If the parties intend the $10,0000 general release payment to require Court approval, then the settlement agreement should say so explicitly and the class notice should similarly alert class members that Plaintiff will seek such a payment.

## IV.   CONCLUSION

For the foregoing reasons, the Court hereby **DENIES** Plaintiffs' motion for preliminary approval of class action settlement. The Court further sets a Case Management Conference for May 2, 2017, at 2:00 p.m.

**IT IS SO ORDERED.**

Dated: 3/31/2017

HAYWOOD S. GILLIAM, JR.
United States District Judge