United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IJEOMA ESOMONU,<br>        Plaintiff,<br>    v.<br>OMNICARE, INC.,<br>        Defendant. | Case No. 15-cv-02003-HSG<br>**ORDER GRANTING PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br>Re: Dkt. No. 85 |

Pending before the Court is the unopposed motion for preliminary approval of class action settlement filed by Plaintiff Ijeoma Esomonu, individually and on behalf of the settlement class as defined herein. Dkt. No. 85. The parties have reached a settlement regarding Plaintiff's claims and now seek the required court approval. For the reasons set forth below, the Court **GRANTS** Plaintiff's motion for preliminary approval of class action settlement.

**I.   BACKGROUND**

    **A.   Factual Background**

On May 4, 2015, Plaintiff filed this action against Defendant, alleging that its hiring practices violated the Fair Credit Reporting Act ("FCRA"). Dkt. No. 1. Plaintiff then amended the complaint on July 21, 2016, adding additional state law claims, including violations of California's Consumer Credit Reporting Agencies Act ("CCRAA"), Cal. Civ. Code §§ 1785.1, *et seq.*, and California's Investigative Consumer Reporting Agencies Act ("ICRAA"), Cal. Civ. Code §§ 1786, *et seq.* Dkt. No. 41-1 ("FAC").

Plaintiff alleges that she was employed by Defendant in the State of California. FAC ¶ 5. According to Plaintiff, when she applied for employment with Defendant, she was required to fill out and sign a background check authorization form and a waiver of liability. *Id.* ¶¶ 29–33. She alleges that the disclosures required under the FCRA, however, were "embedded with extraneous

information" in these forms rather than contained in a stand-alone document. FAC ¶ 34. Plaintiff further alleges that Defendant failed to inform her that she had a right to request a summary of her rights under the FCRA. *Id.* ¶¶ 41, 48. Plaintiff accordingly alleges that Defendant obtained credit and background reports on her — as well as on other prospective, current, and former employees — in violation of federal and state law. *Id.* ¶¶ 2, 41. Defendant answered the complaint on August 12, 2016, denying all claims and asserting several affirmative defenses. Dkt. No. 44.

On June 13, 2016, Plaintiff filed a first motion for preliminary approval of a class action settlement. Dkt. No. 39. The Court raised several concerns about the settlement agreement in the two hearings on the motion for preliminary approval. Although the parties' supplemental briefing allayed many of the Court's concerns, the parties did not adequately address whether the $10,000 general release payment to the named Plaintiff was subject to Court approval. As originally drafted, the named Plaintiff award was a condition of the settlement itself, and was disproportionate to class members' pro rata share, and the proposed class notice did not alert class members that Plaintiff would seek this payment. Dkt. No. 63 at 2–4. Consequently, the Court denied Plaintiffs' first motion for preliminary approval on March 31, 2017. Dkt. No. 63.

### B. Settlement Agreement

Following the first preliminary settlement and with the assistance of a private mediator, the parties entered into the settlement agreement at issue in the pending motion. Dkt. No. 85-1 ("Setareh Decl.") ¶¶ 8–13; Dkt. No. 85-2 ("SA"). The key terms are as follows:

<u>Class Definition</u>: The Settlement Class consists of all persons who (1) received Omnicare's background disclosure forms from May 4, 2010 through May 25, 2018 and (2) had a consumer report or investigative consumer report prepared on them, procured by Omnicare. SA ¶ 19.

<u>Settlement Benefits</u>: All Settlement Class Members who do not opt out will receive a settlement cash payment of a pro rata share of the net settlement fund, which totals $1,300,000, minus attorneys' fees and costs, settlement administration costs, and the Named Plaintiff's enhancement payment. SA ¶¶ 24, 29, 38, 41.

<u>Release</u>: Settlement Class Members who do not choose to opt out will release any claim

1 for:

> An alleged violation of any provision of the Fair Credit Reporting Act, 15 U.S.C. section 1681, et seq., the California Consumer Credit Reporting Agencies Act, California Civil Code section 1785, et seq., the California Investigative Consumer Reporting Agencies Act, California Civil Code section 1786, et seq., California Business and Professions Code section 17200, et seq., or any comparable provision of federal, state or local law in any way relating to or arising out of the procurement of, use of, disclosure of intent to procure, or authorization to procure or use a consumer report, investigative consumer report, credit check, background check, criminal history report, reference check, or similar report that could have been asserted based on the facts alleged in the pleadings.

SA ¶ 51.

Class Notice: A third-party settlement administrator will send class notices via U.S. mail to each member of the class, using a class list provided by Defendant. SA ¶ 55. The notice will include: the nature of the action, a summary of the settlement terms, instructions on how to object to and opt out of the settlement, including relevant deadlines, and the released claims. Dkt. No. 85-3.

Opt-Out Procedure: The parties propose that any putative class member who does not wish to participate in the settlement must sign and postmark a written request for exclusion within 30 days of the mailing of the class notice. SA ¶¶ 36, 58.

Incentive Award: The named Plaintiff will apply for an incentive award of $20,000. SA ¶ 24.

Attorneys' Fees and Costs: Plaintiff will file an application for attorneys' fees not to exceed $433,333.33, and costs and expenses not to exceed $40,000. SA ¶ 17.

## II. PROVISIONAL CLASS CERTIFICATION

The Court first considers whether provisional class certification is appropriate because it is a prerequisite to preliminary approval of a class action settlement.

### A. Legal Standard

Plaintiff bears the burden of showing by a preponderance of the evidence that class certification is appropriate under Federal Rule of Civil Procedure 23. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350–351 (2011). Class certification is a two-step process. First, a plaintiff must establish that each of the four requirements of Rule 23(a) is met: numerosity, commonality,

typicality, and adequacy of representation. *Id.* at 349. Second, she must establish that at least one of the bases for certification under Rule 23(b) is met. Where, as here, a plaintiff seeks to certify a class under Rule 23(b)(3), that plaintiff must show that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

**B.    Analysis**

To determine whether provisional certification is appropriate, the Court considers whether the requirements of Rule 23(a) and Rule 23(b)(3) have been met. As discussed in more detail below, the Court finds those requirements have been met in this case.

### i.    Rule 23(a) Certification

#### a.    Numerosity

Rule 23(a)(1) requires that the putative class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). The Court finds that numerosity is satisfied here because joinder of the estimated 50,000 Class Members would be impracticable. *See* Dkt. No. 85 at 19.

#### b.    Commonality

Rule 23(a)(2) requires that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). A contention is sufficiently common where "it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 564 U.S at 350. Commonality exists where "the circumstances of each particular class member vary but retain a common core of factual or legal issues with the rest of the class." *Parra v. Bashas', Inc.*, 536 F.3d 975, 978–79 (9th Cir. 2008). "What matters to class certification . . . is not the raising of common 'questions'―even in droves—but, rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Dukes*, 564 U.S at 350. Even a single common question is sufficient to meet this requirement. *Id.* at 359.

Common questions of law and fact in this action include: whether the forms used by

4

1  Defendant comply with the requirements of the Fair Credit Reporting Act and the ICRAA;
2  whether the disclosure forms are standalone disclosures that "consist solely of the disclosure";
3  whether Defendant can include liability releases, state law notices, a request that the applicant
4  disclose his or her race and gender, authorization for drug testing, and authorization for Defendant
5  to obtain public and private records in its forms; and whether any violation was willful. *See* Dkt.
6  No. 74 (Plaintiff's motion for class certification) at 16. Accordingly, the Court finds that the
7  commonality requirement is met in this case.

### c. Typicality

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (internal quotation marks omitted). That said, under the "permissive standards" of Rule 23(a)(3), the claims "need not be substantially identical." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998).

Plaintiff's claims are both factually and legally similar to those of the putative class because Defendant's conduct allegedly resulted in FCRA, CCRAA, and ICRAA violations affecting Plaintiff and all class members who received the subject background disclosure forms. Plaintiff has not alleged any individual claims. This is sufficient to satisfy the typicality requirement.

### d. Adequacy of Representation

Rule 23(a)(4) requires that the "representative parties will fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(a)(4). The Court must address two legal questions: (1) whether the named Plaintiff and his counsel have any conflicts of interest with other class members, and (2) whether the named Plaintiff and his counsel will prosecute the action vigorously on behalf of the class. *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 462 (9th Cir. 2000). This inquiry "tend[s] to merge" with the commonality and typicality criteria. *Gen. Tel. Co. of Sw.*

*v. Falcon*, 457 U.S. 147, 158 n.13 (1982). In part, these requirements determine whether "the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Id.*

The Court is unaware of any actual conflicts of interest in this matter and no evidence in the record suggests that either Plaintiff or proposed class counsel have a conflict with other class members. Dkt. No. 85-1 ¶ 17. Plaintiff's counsel has been appointed class counsel in numerous federal and state class actions. Dkt. No. 85-1 ¶ 18. The Court finds that proposed class counsel and Plaintiff have prosecuted this action vigorously on behalf of the class to date, and will continue to do so. The adequacy of representation requirement is therefore satisfied.

### ii. Rule 23(b)(3) Certification

To certify a class, Plaintiff must also satisfy the two requirements of Rule 23(b)(3). First, "questions of law or fact common to class members [must] predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). And second, "a class action [must be] superior to other available methods for fairly and efficiently adjudicating the controversy." *Id*. The Court finds that both are met in this case.

#### a. Predominance

"The predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) (internal quotation marks omitted). The Supreme Court has defined an individual question as "one where members of a proposed class will need to present evidence that varies from member to member . . . ." *Id.* (internal quotation marks omitted). A common question, on the other hand, "is one where the same evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized, class-wide proof." *Id.* (internal quotation marks omitted).

Here, the Court finds for purposes of settlement that the common questions raised by Plaintiff's claims predominate over questions affecting only individual members of the proposed class. Plaintiff alleges that Defendant's forms were in violation of federal and state law in the same way for all class members, and that those violations were the result of the same set of actions and decisions. *See* SAC ¶ 15. Because, according to Plaintiff's allegations, Defendant's

6

violations were uniform as to all class members, the Court finds the predominance requirement is satisfied for purposes of provisional class certification.

### b. Superiority

The superiority requirement tests whether "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The Court considers four non-exclusive factors: (1) the interest of each class member in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already commenced by or against the class; (3) the desirability of concentrating the litigation of the claims in the particular forum; and (4) the difficulties likely to be encountered in the management of a class action. *Id.*

Here, because common legal and factual questions predominate over individual ones, and taking into account the large size of the proposed class, the Court finds that the judicial economy achieved through common adjudication renders class action a superior method for adjudicating the claims of the proposed class.

### iii. Class Representative and Class Counsel

Because the Court finds that Plaintiff meets the commonality, typicality, and adequacy requirements of Rule 23(a), the Court appoints her as class representative. When a court certifies a class, it must also appoint class counsel. Fed. R. Civ. P. 23(c)(1)(B). Factors that courts should consider when making that decision include:

(i) the work counsel has done in identifying or investigating potential claims in the action;
(ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;
(iii) counsel's knowledge of the applicable law; and
(iv) the resources that counsel will commit to representing the class.

Fed. R. Civ. P. 23(g)(1)(A).

In light of Plaintiff's counsel's extensive experience litigating class actions in federal court, Dkt. No. 85-1 ¶ 18, and counsel's diligence in prosecuting this action to date, the Court appoints Setareh Law Group as class counsel.

7

## III. PRELIMINARY SETTLEMENT APPROVAL

### A. Legal Standard

Federal Rule of Civil Procedure 23(e) provides that "[t]he claims, issues, or defenses of a certified class—or a class proposed to be certified for purposes of settlement— may be settled . . . only with the court's approval." Fed. R. Civ. P. 23(e). "The purpose of Rule 23(e) is to protect the unnamed members of the class from unjust or unfair settlements affecting their rights." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1100 (9th Cir. 2008). Accordingly, before a district court approves a class action settlement, it must conclude that the settlement is "fundamentally fair, adequate and reasonable." *In re Heritage Bond Litig.*, 546 F.3d 667, 674–75 (9th Cir. 2008).

Where the parties reach a class action settlement prior to class certification, district courts apply "a higher standard of fairness and a more probing inquiry than may normally be required under Rule 23(e)." *Dennis v. Kellogg Co.*, 697 F.3d 858, 864 (9th Cir. 2012) (internal quotation marks omitted). In those situations, courts "must be particularly vigilant not only for explicit collusion, but also for more subtle signs that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011).

Courts may preliminarily approve a settlement and direct notice to the class if the proposed settlement: (1) appears to be the product of serious, informed, non-collusive negotiations; (2) has no obvious deficiencies; (3) does not grant improper preferential treatment to class representatives or other segments of the class; and (4) falls within the range of possible approval. *See In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007). Courts lack the authority, however, to "delete, modify or substitute certain provisions. The settlement must stand or fall in its entirety." *Hanlon*, 150 F.3d at 1026.

### B. Analysis

#### i. Settlement Process

The first factor the Court considers is the means by which the parties settled the action. "An initial presumption of fairness is usually involved if the settlement is recommended by class counsel after arm's-length bargaining." *Harris v. Vector Mktg. Corp.*, No. 08-cv-5198, 2011 WL

1627973, at *8 (N.D. Cal. Apr. 29, 2011).

Here, class counsel believes, based on significant formal discovery and arms-length negotiations, that the settlement is fair, adequate, and reasonable. Dkt. No. 85 at 5–6; Dkt. No. 85-1 ¶¶ 6–10. The Court consequently finds that this factor weighs in favor of preliminary approval.

### ii. Preferential Treatment

The Court next considers whether the settlement agreement provides preferential treatment to any class member. The Ninth Circuit has instructed that district courts must be "particularly vigilant" for signs that counsel have allowed the "self-interests" of "certain class members to infect negotiations." *In re Bluetooth.*, 654 F.3d at 947. For that reason, courts in this district have consistently stated that preliminary approval of a class action settlement is inappropriate where the proposed agreement "improperly grant[s] preferential treatment to class representatives." *Tableware*, 484 F. Supp. 2d at 1079.

Although the Settlement Agreement authorizes Plaintiff to seek an incentive award of $20,000 for her role as named plaintiff in this lawsuit, *see* SA ¶ 24, the Court will ultimately determine whether she is entitled to such an award and the reasonableness of the amount requested. Incentive awards "are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action." *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 958–59 (9th Cir. 2009). Plaintiff must provide sufficient evidence to allow the Court to evaluate the named plaintiff's award "individually, using relevant factors includ[ing] the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, . . . [and] the amount of time and effort the plaintiff expended in pursuing the litigation." *Stanton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003) (internal quotation marks omitted). The Court will consider the evidence presented at the final fairness hearing and evaluate the reasonableness of any incentive award request. Nevertheless, because incentive awards are not per se unreasonable, the Court finds that this factor still weighs in favor of preliminary approval. *See Rodriguez*, 563 F.3d at 958 (finding that "[i]ncentive awards are fairly typical in class action cases" and "are discretionary") (emphasis omitted).

9

### iii. Settlement within Range of Possible Approval

The third factor that the Court considers is whether the settlement is within the range of possible approval. To evaluate whether the settlement amount is adequate, "courts primarily consider plaintiffs' expected recovery balanced against the value of the settlement offer." *Tableware*, 484 F. Supp. 2d at 1080. This requires the Court to evaluate the strength of Plaintiff's case.

Here, individual class members' estimated recovery, accounting for the maximum requested attorneys' fees and costs, is approximately $16.50. Dkt. No. 85 at 15; SA ¶¶ 17, 24, 29, 38, 41. There is substantial risk Plaintiff would face in litigating the case given the nature of the asserted claims. Dkt. No. 85 at 13–14; Dkt. No. 86. Defendant asserts, for example, that Plaintiff and the class members would face risks in proving Article III standing, proving that Defendant's forms did not contain "clear and conspicuous" disclosures, and proving class-wide damages. Dkt. No. 86 at 1–7. The Court finds that the settlement amount, given these risks, weighs in favor of granting preliminary approval.

### iv. Obvious Deficiencies

The fourth and final factor that the Court considers is whether there are obvious deficiencies in the settlement agreement. The Court finds no obvious deficiencies, and therefore finds that this factor weighs in favor of preliminary approval.

\* \* \*

Having weighed the relevant factors, the Court preliminarily finds that the settlement agreement is fair, reasonable, and adequate, and **GRANTS** preliminary approval.

## IV. MOTION FOR FINAL SETTLEMENT APROVAL AND ATTORNEYS' FEES

The Court **DIRECTS** the parties to include both a joint proposed order and a joint proposed judgment when submitting their motion for final approval.

## V. PROPOSED CLASS NOTICE PLAN

For Rule 23(b)(3) class actions, "the court must direct notice to the class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B).

With respect to the content of the notice itself, the notice must clearly and concisely state in plain, easily understood language:

    (i)    the nature of the action;
    (ii)   the definition of the class certified;
    (iii)  the class claims, issues, or defenses;
    (iv)  that a class member may enter an appearance through an attorney if the member so desires;
    (v)   that the court will exclude from the class any member who requests exclusion;
    (vi)  the time and manner for requesting exclusion; and
    (vii) the binding effect of a class judgment on members.

Fed. R. Civ. P. 23(c)(2)(B).

The Court finds that the proposed notice, Dkt. No. 85-3, is the best practicable form of notice under the circumstances.

## VI. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Plaintiff's motion for preliminary approval of class action settlement. The parties are **DIRECTED** to meet and confer and stipulate to a schedule of dates for each event listed below, which shall be submitted to the Court within seven days of the date of this Order:

| Event | Date |
|---|---|
| Deadline for Settlement Administrator to mail notice to all putative class members | |
| Filing Deadline for attorneys' fees and costs motion | |
| Filing deadline for incentive payment motion | |
| Deadline for class members to opt-out or object to settlement and/or application for attorneys' fees and costs and incentive payment | |
| Filing deadline for final approval motion | |
| Final fairness hearing and hearing on motions | |

The parties are further **DIRECTED** to implement the proposed class notice plan.

**IT IS SO ORDERED.**

Dated: 8/21/2018

HAYWOOD S. GILLIAM, JR.
United States District Judge

11