UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IJEOMA ESOMONU,<br><br>    Plaintiff,<br><br>v.<br><br>OMNICARE, INC.,<br><br>    Defendant. | Case No. 15-cv-02003-HSG<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Re: Dkt. No. 98 |

## I. INTRODUCTION

Pending before the Court is the motion for final approval of class action settlement and for attorneys' fees filed by Plaintiff Ijeoma Esomonu. Dkt. No. 98. The Court held a final fairness hearing on the motion on December 20, 2018. Dkt. No. 101. For the reasons stated below, the Court GRANTS the motion for final approval and GRANTS IN PART AND DENIES IN PART the motion for fees, costs and incentive award.

## II. BACKGROUND

### A. Factual Allegations and Procedural History

On May 4, 2015, Plaintiff filed this action against Defendant, alleging that its hiring practices violated the Fair Credit Reporting Act ("FCRA"). Dkt. No. 1. Plaintiff then amended the complaint on July 21, 2016, adding additional state law claims, including violations of California's Consumer Credit Reporting Agencies Act ("CCRAA"), Cal. Civ. Code §§ 1785.1, *et seq.*, and California's Investigative Consumer Reporting Agencies Act ("ICRAA"), Cal. Civ. Code §§ 1786, *et seq.* Dkt. No. 41-1 ("FAC").

Plaintiff alleges that she was employed by Defendant in the State of California. FAC ¶ 5. According to Plaintiff, when she applied for employment with Defendant, she was required to fill

out and sign a background check authorization form and a waiver of liability. *Id.* ¶¶ 29–33. She alleges that the disclosures required under the FCRA were "embedded with extraneous information" in these forms rather than contained in a stand-alone document. FAC ¶ 34. Plaintiff further alleges that Defendant failed to inform her that she had a right to request a summary of her rights under the FCRA. *Id.* ¶¶ 41, 48. Plaintiff accordingly alleges that Defendant obtained credit and background reports on her—as well as on other prospective, current, and former employees—in violation of federal and state law. *Id.* ¶¶ 2, 41. Defendant answered the complaint on August 12, 2016, denying all claims and asserting several affirmative defenses. Dkt. No. 44.

On June 13, 2016, Plaintiff filed a first motion for preliminary approval of a class action settlement. Dkt. No. 39. The Court raised several concerns about the settlement agreement in the two hearings on the motion for preliminary approval. Although the parties' supplemental briefing allayed many of the Court's concerns, the parties did not adequately address whether the $10,000 general release payment to the named Plaintiff was subject to Court approval. As originally drafted, the named Plaintiff award was a condition of the settlement itself and was disproportionate to class members' pro rata share, and the proposed class notice did not alert class members that Plaintiff would seek this payment. Dkt. No. 63 at 2–4. Consequently, the Court denied Plaintiffs' first motion for preliminary approval on March 31, 2017. Dkt. No. 63.

On May 25, 2018, Plaintiff filed a second motion for preliminary approval, which explicitly recognized that any incentive award paid to the named Plaintiff was subject to the Court's approval. Dkt. No. 85; Dkt. No. 85-2 ¶ 24. The Court granted Plaintiff's motion for preliminary approval on August 21, 2018. Dkt. No. 89.

**B.  Overview of the Proposed Settlement**

Following the first preliminary settlement and with the assistance of a private mediator, the parties entered into the settlement agreement at issue in the pending motion. Dkt. No. 98-1 ("Setareh Decl.") ¶¶ 8–13; Dkt. No. 98-2 ("SA"). The key terms are as follows:

Class Definition: The Settlement Class consists of all persons who (1) received Omnicare's background disclosure forms from May 4, 2010 through May 25, 2018 and (2) had a consumer report, investigative consumer report, consumer credit report, or other background

2

check prepared on them that Omnicare procured. SA ¶ 19.

Settlement Benefits: All Settlement Class Members who do not opt out will receive a settlement cash payment of a pro rata share of the net settlement fund, which totals $1,300,000, minus attorneys' fees and costs, settlement administration costs, and the Named Plaintiff's enhancement payment. SA ¶¶ 24, 29, 38, 41.

Release: Settlement Class Members who do not choose to opt out will release any claim for:

> An alleged violation of any provision of the Fair Credit Reporting Act, 15 U.S.C. section 1681, et seq., the California Consumer Credit Reporting Agencies Act, California Civil Code section 1785, et seq., the California Investigative Consumer Reporting Agencies Act, California Civil Code section 1786, et seq., California Business and Professions Code section 17200, et seq., or any comparable provision of federal, state or local law in any way relating to or arising out of the procurement of, use of, disclosure of intent to procure, or authorization to procure or use a consumer report, investigative consumer report, credit check, background check, criminal history report, reference check, or similar report that could have been asserted based on the facts alleged in the pleadings.

SA ¶ 51.

Class Notice: Dahl Administration, LLC, a third-party settlement administrator, sent class notices via U.S. mail to each member of the class, using a class list provided by Defendant. Dkt. No. 98-5 ¶¶ 7–10; SA ¶ 55. The notice included the nature of the action, a summary of the settlement terms, instructions on how to object to and opt out of the settlement, including relevant deadlines, and the released claims. Dkt. No. 98-5 ¶¶ 9–10; Dkt. No. 98-6.

Opt-Out Procedure: The parties proposed that any putative class member who does not wish to participate in the settlement must have signed and postmarked a written request for exclusion within 30 days of the mailing of the class notice. SA ¶¶ 36, 58.

Incentive Award: Plaintiff asks the Court to award the named Plaintiff an incentive award of $20,000. Dkt. No. 98 at 1; SA ¶ 24.

Attorneys' Fees and Costs: Plaintiff applies for attorneys' fees in the amount of $433,333.33, and costs and expenses in the amount of $21,374.63. Dkt. No. 98 at 1; SA ¶ 17.

Settlement Administrator Expenses: Plaintiff applies for settlement administrator expenses in the amount of $80,000. Dkt. No. 98 at 1; SA ¶ 50.

## III. ANALYSIS

### A. Final Settlement Approval

#### i. Class Certification

Final approval of a class action settlement requires, as a threshold matter, an assessment of whether the class satisfies the requirements of Federal Rule of Civil Procedure 23(a) and (b). *Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1019–1022 (9th Cir. 1998). Because no facts that would affect these requirements have changed since the Court preliminarily approved the class on August 21, 2018, this order incorporates by reference its prior analysis under Rules 23(a) and (b) as set forth in the order granting preliminary approval. *See* Dkt. No 89 at 3–7.

#### ii. The Settlement

"The claims, issues, or defenses of a certified class may be settled . . . only with the court's approval." Fed. R. Civ. P. 23(e). The Court may finally approve a class settlement "only after a hearing and on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2); *Officers for Justice v. Civil Serv. Comm'n of the City and Cty. of S.F.*, 688 F.2d 615, 625 (9th Cir. 1982) ("The district court's role in evaluating a proposed settlement must be tailored to fulfill the objectives outlined above. In other words, the court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties . . . ."). To assess whether a proposed settlement comports with Rule 23(e), the Court "may consider some or all" of the following factors: (1) the strength of plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed, and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement. *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 963 (9th Cir. 2009); *see Hanlon*, 150 F.3d at 1026. "The relative degree of importance to be attached to any particular factor" is case specific. *Officers for Justice*, 688 F.2d at 625.

In addition, "[a]dequate notice is critical to court approval of a class settlement under Rule 23(e)." *Hanlon*, 150 F.3d at 1025. As discussed below, the Court finds that the proposed settlement is fair, adequate, and reasonable, and that class members received adequate notice.

### a. Adequacy of Notice

Under Federal Rule of Civil Procedure 23(e), the Court "must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). Rule 23(c)(2)(B) requires "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." The notice must "clearly and concisely state in plain, easily understood language" the nature of the action, the class definition, and the class members' right to exclude themselves from the class. Fed. R. Civ. P. 23(c)(2)(B). Although Rule 23 requires that reasonable efforts be made to reach all class members, it does not require that each class member actually receive notice. *See Rannis v. Recchia*, 380 F. App'x 646, 650 (9th Cir. May 27, 2010) (noting that "due process requires reasonable effort to inform affected class members through individual notice, not receipt of individual notice").

The Court finds that the notice plan previously approved by the Court, Dkt. No. 89 at 10–11, was implemented and complies with Rule 23(c)(2)(B). As outlined in the settlement agreement, the third-party settlement administrator, Dahl Administration, LLC, was provided with names and other identifying information for putative class members. *See* Dkt. No. 98-5 ¶¶ 4–5. Prior to sending physical notice, Dahl ran mailing address records through the National Change of Address Database and received updated addresses. *Id.* ¶ 8. On October 5, 2018, Dahl sent short-form physical notice, Dkt. No. 98-7, via First Class Mail to 43,069 potential class members. Dkt. No. 98-5 ¶ 10. As of October 17, 2018, the Postal Service had returned 1,787 short-form notices as undeliverable. *Id.* ¶ 11. After consulting a professional address location service, 1,100 short-form notices were re-mailed. *Id.* On October 5, 2018, Dahl additionally established a settlement website, which contains a summary of the settlement, copies of certain settlement documents, a long-form notice, and contact information for the settlement administrator. *Id.* ¶ 6. Dahl also established a toll-free number for class members, and has processed at least 783 calls. *Id.* ¶ 13.

5

1  Counsel represented at the final fairness hearing that Dahl received no objections and three
2  requests for exclusion from the settlement. *See also id.* ¶ 15. In light of these facts, the Court
3  finds that the parties have sufficiently provided the best practicable notice to the class members.

### b. Fairness, Adequacy, and Reasonableness

Having found the notice procedures adequate under Rule 23(e), the Court next considers whether the entire settlement comports with Rule 23(e).

#### 1. Strength of Plaintiff's Case, Litigation Risks, and Risks of Maintaining Class Action Status

Approval of a class settlement is appropriate when plaintiffs must overcome significant barriers to make their case. *Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 851 (N.D. Cal. 2010). Courts "may presume that through negotiation, the Parties, counsel, and mediator arrived at a reasonable range of settlement by considering Plaintiff's likelihood of recovery." *Garner v. State Farm Mut. Auto. Ins. Co.*, No. 08-cv-1365-CW, 2010 WL 1687832, at *9 (N.D. Cal. Apr. 22, 2010). Additionally, difficulties and risks in litigating weigh in favor of approving a class settlement. *Rodriguez*, 563 F.3d at 966. "Generally, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *Ching v. Siemens Indus., Inc.*, No. 11-cv-04838-MEJ, 2014 WL 2926210, at *4 (N.D. Cal. Jun. 27, 2014) (quotation omitted).

This action reached settlement before the Court had an opportunity to consider the merits of the claims. But Plaintiff would face both factual and legal hurdles were the litigation to proceed. In Defendant's answer to the first amended complaint, Defendant denied virtually all allegations, and asserted eleven defenses challenging the legal basis and factual sufficiency of Plaintiff's claims. Dkt. No. 44. Plaintiff also identifies challenges to obtaining statutory damages under the FCRA—ranging from $100 to $1,000—which are only available if Plaintiff establishes that Defendant willfully violated that statute. *See* Dkt. No. 98 at 8; *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 57–59 (2007). With respect to maintaining class action status, a putative class of over 40,000 individuals in itself presents complex issues potentially undermining certification.

Considering Defendant's apparent willingness to defend against this action and the

uncertain state of the law, Plaintiff was not guaranteed a favorable result.  In reaching a settlement, however, Plaintiff ensured a favorable recovery for the class.  *See Rodriguez*, 563 F.3d at 966 (finding litigation risks weigh in favor of approving class settlement).  Accordingly, these factors support approving the settlement.  *See Ching*, 2014 WL 2926210, at *4 (favoring settlement to protracted litigation).

### 2. Settlement Amount

The amount offered in the settlement is another factor that weighs in favor of approval.  Based on the facts in the record and the parties' arguments at the final fairness hearing, the Court finds that the $1,300,000 settlement amount falls "within the range of reasonableness" in view of litigation risks and costs.  Each participating class member will receive an estimated $17.31 after deductions for attorneys' fees and costs, settlement administration costs, and an incentive award for Plaintiff.  *See* Dkt. No. 98-5 ¶ 18.  That amount is substantially below the range of potential statutory damages, but commensurate with recoveries approved by other California district courts.  *See* 15 U.S.C. § 1681n(a)(1)(A).  *See In re Toys R Us-Delaware, Inc. FACTA Litig.*, 295 F.R.D. 438, 454 (C.D. Cal. 2014) (recognizing as reasonable a $5 to $30 award given the difficulties of proving actual or statutory damages under FCRA); *Fraley v. Facebook, Inc.*, 966 F. Supp. 2d 939, 943–44 (N.D. Cal. 2013), *aff'd sub nom. Fraley v. Batman*, 638 F. App'x 594 (9th Cir. Jan. 6, 2016) (granting final approval to a class action settlement awarding $15 to each claiming class member despite statutory damages ranging up to $750); *Rhom v. Thumbtack, Inc.*, No. 16-CV-02008-HSG, 2017 WL 4642409, at *5 (N.D. Cal. Oct. 17, 2017) (recognizing as reasonable a $41.39 award in FCRA case).

And as discussed, recovery of statutory damages under the FCRA requires a high threshold showing that the Defendant acted willfully.  The Ninth Circuit has cautioned that just because a settlement could have been better "does not mean the settlement presented was not fair, reasonable or adequate."  *Hanlon*, 150 F.3d at 1027 ("Settlement is the offspring of compromise; the question we address is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion.").

### 3. Extent of Discovery Completed and Stage of Proceedings

Class counsel had sufficient information to make an informed decision about the merits of the case. *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000). Plaintiff investigated Defendant's policies and practices for background check authorization and disclosure. Dkt. No. 98-1 ¶¶ 4–8. Plaintiff pursued settlement only after conducting extensive legal research, assessing the contested pleadings, and conferring at arms' length with opposing counsel. *Id*. Two mediators then facilitated settlement discussions. The Court finds that the parties have sufficiently analyzed materials that sufficiently enabled them to assess the likelihood of success on the merits. This factor weighs in favor of approval.

### 4. Experience and Views of Counsel

The Court next considers the experience and views of counsel, and finds that this factor also weighs in favor of approval. "[P]arties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." *Rodriguez*, 563 F.3d at 967 (quotation omitted). Accordingly, "[t]he recommendations of plaintiffs' counsel should be given a presumption of reasonableness." *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008). The Court has previously evaluated class counsel's qualifications and experience and concluded that counsel is qualified to represent the classes' interests in this action. *See* Dkt. No. 89 at 5–7. As discussed, class counsel initiated settlement discussions only after assessing the risks of continuing the litigation. The Court recognizes, however, that courts have diverged on the weight to assign counsel's opinions. *Compare Carter v. Anderson Merch.*, LP, 2010 WL 1946784, at *8 (C.D. Cal. May 11, 2010) ("Counsel's opinion is accorded considerable weight."), *with Chun-Hoon*, 716 F. Supp. 2d at 852 ("[T]his court is reluctant to put much stock in counsel's pronouncements. . . ."). This factor's impact is therefore modest, but favors approval.

### 5. Reaction of Class Members

The reaction of class members supports final approval. "[T]he absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." *Nat'l Rural Telecomms.*

8

*Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 529 (C.D. Cal. 2004); *In re Linkedin User Privacy Litig.*, 309 F.R.D. 573, 589 (N.D. Cal. 2015) ("A low number of opt-outs and objections in comparison to class size is typically a factor that supports settlement approval.").

Class notice, which was served on each class member in accordance with the methods approved by the Court, advised the class of the requirements regarding objections and exclusions. *See* Dkt. No. 98-5 ¶¶ 6–10, Exs. A, B. The deadline to object or request exclusion was November 12, 2018. *Id.* ¶ 15. Dahl received zero objections and three requests for exclusion. *See id.* ¶¶ 15–16. The absence of objections and the minimal number of opt-outs indicates support among the class members and weighs in favor of approval. *See, e.g.*, *Churchill Village LLC v. Gen. Elec.*, 361 F.3d 566, 577 (9th Cir. 2004) (affirming settlement where 45 of approximately 90,000 class members objected).

\*   \*   \*

After considering and weighing the above factors, the Court finds that the settlement agreement is fair, adequate, and reasonable, and that the settlement class members received adequate notice. Accordingly, Plaintiff's motion for final approval of class action settlement is **GRANTED**.

### B. Motion for Attorneys' Fees and Costs

Class counsel asks the Court to approve an award of $433,333.33 in attorneys' fees and $21,374.63 in costs. Dkt. No. 98 at 1. Class counsel also seeks a $20,000 incentive award for the named Plaintiff for her assistance in this case. *Id.*

#### i. Attorneys' Fees

"In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). The Court has discretion in a common fund case to choose either (1) the lodestar method or (2) the percentage-of-the-fund when calculating reasonable attorneys' fees. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002).

Under the percentage-of-recovery method, twenty-five percent of a common fund is the benchmark for attorneys' fees awards. *See*, *e.g.*, *In re Bluetooth*, 654 F.3d at 942 ("[C]ourts

typically calculate 25% of the fund as the 'benchmark' for a reasonable fee award, providing adequate explanation in the record of any 'special circumstances' justifying a departure."); *Six Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990).

Under the lodestar method, a "lodestar figure is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation (as supported by adequate documentation) by a reasonable hourly rate for the region and for the experience of the lawyer." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 941 (9th Cir. 2011) (citing *Staton v. Boeing Co.*, 327 F.3d 938, 965 (9th Cir. 2003)). Whether the Court awards the benchmark amount or some other rate, the award must be supported "by findings that take into account all of the circumstances of the case." *Vizcaino*, 290 F.3d at 1048.

"[T]he established standard when determining a reasonable hourly rate is the rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation." *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008) (quotation omitted). Generally, "the relevant community is the forum in which the district court sits." *Id.* (citing *Barjon v. Dalton*, 132 F.3d 496, 500 (9th Cir. 1997)). Typically, "affidavits of the plaintiffs' attorney and other attorneys regarding prevailing fees in the community, and rate determinations in other cases . . . are satisfactory evidence of the prevailing market rate." *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990). "In addition to affidavits from the fee applicant, other evidence of prevailing market rates may include affidavits from other area attorneys or examples of rates awarded to counsel in previous cases." *Schuchardt v. Law Office of Rory W. Clark*, 314 F.R.D. 673, 687 (N.D. Cal. 2016).

Although "the choice between lodestar and percentage calculation depends on the circumstances, . . . either method may . . . have its place in determining what would be reasonable compensation for creating a common fund." *Six Mexican Workers*, 904 F.2d at 1311 (quotation omitted). To guard against an unreasonable result, the Ninth Circuit has encouraged district courts to cross-check any calculations done in one method against those of another method. *Vizcaino*, 290 F.3d at 1050–51.

Class counsel here seeks $433,333.33 in fees, or one-third (33.3%) of the settlement

amount. *See* Dkt. No. 98 at 1, 15. That well exceeds the benchmark for a reasonable fee award under the percentage-of-recovery method. *See In re Bluetooth*, 654 F.3d at 942 (typical 25% benchmark). The fee amount requested is also greater than class counsel's fees would be if calculated using the lodestar method. In calculating its lodestar, class counsel contends that it expended a combined 397.5 hours between eight attorneys. Dkt. No. 98 at 17. With respect to hourly rates, the eight attorneys request rates between $350 per hour and $750 per hour. *Id.*; Dkt. No. 98-1 ¶ 22. According to class counsel, this yields a lodestar of $248,528.75. *Id.* Based on the figures provided, the Court reaches a slightly higher lodestar of $248,616.25. Counsel suggests that an approximately 1.74 multiplier of the lodestar is appropriate in this case. Dkt. No. 98 at 18.

Having reviewed class counsel's qualifications and supporting documents, the Court finds that the billing rates used are reasonable and generally in line with rates for personnel of comparable experience, skill, and reputation. *See, e.g.*, *Rutti v. Lojack Corp.*, No. SACV 06-350 DOC JCX, 2012 WL 3151077, at *11 (C.D. Cal. July 31, 2012) (approving rates of up to $750 per hour in wage and hour case); *Pierce v. Cty. of Orange*, 905 F. Supp. 2d 1017, 1039 (C.D. Cal. 2012) (approving hourly rates of up to $850 per hour).

However, the proffered lodestar amount is of limited use in evaluating the reasonableness of the requested fee award. Here, class counsel reached a settlement with Defendant in 2016, but the Court denied preliminary approval on the sole basis that Plaintiff's counsel insisted on making a $10,000 "general release" payment to the Named Plaintiff a condition of the settlement not subject to the Court's discretionary approval. *See* Dkt. Nos. 39, 63. The Court found that counsel did not provide factual support for that request, and it raised significant questions undermining the fundamental fairness of the settlement. Dkt. No. 63 at 4-5. In the multi-year interim between the Court's order denying approval of Plaintiffs' 2016 settlement and the currently-pending motion for final approval, class counsel billed approximately 70% of the hours presented in their lodestar calculation. *See* Dkt. No. 100-1. Those hours would not have been expended had Plaintiffs' counsel properly structured the settlement in the first place.

Fortunately for the class (and fortuitously for class counsel), Defendant ultimately agreed to a significantly larger settlement, for reasons that appear to relate to a desire for finality

11

following a corporate acquisition. *Compare* Dkt. No. 39-2 ¶ 20 ($485,000 gross settlement fund) *with* SA ¶ 41 ($1,300,000 settlement fund). But for counsel's decision not to proceed with the 2016 settlement (based on their insistence on including the disproportionate mandatory payment to the Named Plaintiff), this case would have settled long ago, for around 37% of what ended up being the settlement amount. Thus, while counsel's work eventually resulted in a fair and reasonable settlement for the class members, the Court sees absolutely no basis for a deviation from the benchmark attorneys' fee award under these circumstances. The Court will therefore award the benchmark 25% of the settlement fund in attorneys' fees, or $325,099.37.

### ii. Attorneys' Costs

Class counsel is also entitled to recover "those out-of-pocket expenses that would normally be charged to a fee paying client." *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (quotation omitted). Class counsel seeks reimbursement of $21,374.63 in litigation costs. Dkt. No. 98-1 ¶¶ 24–25; Dkt. Nos. 98-3, 98-4. Class counsel has provided itemized documentation demonstrating that the amount requested covers expenses of filing, document delivery, and travel. *See id.* Defendant does not oppose class counsel's request. The Court finds the amount requested by counsel reasonably incurred, and the Court **GRANTS** the motion for costs in the amount of $21,374.63.

### iii. Incentive Award

Class counsel requests a service award of $20,000 for named Plaintiff. *See* Dkt. No. 98 at 1, 19. "[N]amed plaintiffs . . . are eligible for reasonable incentive payments." *Staton*, 327 F.3d at 977; *Rodriguez*, 563 F.3d at 958 ("Incentive awards are fairly typical in class action cases."). They are designed to "compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez*, 563 F.3d at 958–59. Nevertheless, the Ninth Circuit has cautioned that "district courts must be vigilant in scrutinizing all incentive awards to determine whether they destroy the adequacy of the class representatives . . . ." *Radcliffe v. Experian Info. Solutions, Inc.*, 715 F.3d 1157, 1164 (9th Cir. 2013). This is particularly true where "the proposed service fees greatly exceed the payments to

absent class members." *Id.* at 1165 (quotation omitted). The district court must evaluate an incentive award using "relevant factors includ[ing] the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, . . . [and] the amount of time and effort the plaintiff expended in pursuing the litigation . . . ." *Staton*, 327 F.3d at 977 (quotation omitted).

Plaintiff estimates that she expended approximately 55 hours in the prosecution of this action. *See* Dkt. No. 98-8 ¶ 7.[1] Plaintiff also undertook financial and reputational risks in acting on behalf of the class, considering in particular her ability to find employment in the future. *Id.* ¶ 8. Courts in this district have recognized a $5,000 incentive award as "presumptively reasonable." *Smith v. Am. Greetings Corp.*, No. 14-CV-02577-JST, 2016 WL 362395, at *10 (N.D. Cal. Jan. 29, 2016); *see Odrick v. UnionBancal Corp.*, No. C 10-5565 SBA, 2012 WL 6019495, at *7 (N.D. Cal. Dec. 3, 2012) (granting an award of $5,000 to a plaintiff devoting a similar number of hours to prosecuting a wage and hour class action); *Harris v. Vector Mktg. Corp.*, No. C-08-5198 EMC, 2012 WL 381202, at *7 (N.D. Cal. Feb. 6, 2012) (observing that "as a general matter, $5,000 is a reasonable amount").

The Court finds the $20,000 incentive payment request grossly disproportionate: it is inappropriate to award more than one thousand times the average recovery projected for other class members to Named Plaintiff on this record. However, because Named Plaintiff did add value to class action, the Court authorizes payment of the presumptively reasonable enhancement award of $5,000.

**IV. CONCLUSION**

For the foregoing reasons it is hereby ordered that:

    a. Plaintiff's Motion for Final Approval of Class Action Settlement is **GRANTED**. Plaintiff's Motion for an Award of Attorneys' Fees, Reimbursement of Costs to Class Counsel, and Incentive Award is hereby **GRANTED IN PART**.

    b. The Court approves the settlement amount of $1,300,000 including payments of

---

[1] Again, presumably a significant portion of these hours were incurred after the Court declined to approve the 2016 settlement.

13

attorneys' fees in the amount of $325,099.37; costs in the amount of $21,374.63; and an incentive fee for the named Plaintiff in the amount of $5,000.

The parties and settlement administrator are directed to implement this Final Order and the settlement agreement in accordance with the terms of the settlement agreement. The parties are directed to submit a joint proposed judgment by February 14, 2019.

**IT IS SO ORDERED.**

Dated: 2/8/2019

HAYWOOD S. GILLIAM, JR.
United States District Judge